UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Crim. Action No. 19-0252 (ABJ) |
| ) | ***SEALED*** |
| BRENDON SPANN, ) | |
| ) | |
| Defendant. ) | |

### MEMORANDUM OPINION & ORDER

Pending before the Court is defendant Brendon Spann's *pro se* motion for compassionate release, [Dkt. # 60] ("Mot."), and the supplemental motion filed by counsel. [Dkt. # 62] ("Suppl."). Defendant is currently serving a thirty-month sentence of incarceration, Judgment [Dkt. # 58] at 2, at Federal Correctional Institution ("FCI") Milan in Michigan. He asks the Court to reduce his term of imprisonment to the nearly twenty-one months he has already served and to allow him to complete the remaining portion of his sentence under supervised release. Mot. at 1. Defendant states that he fears for his health, given his risk of serious illness should he contract coronavirus while incarcerated, *id.* at 1–2, and his safety, given the March 2021 attack by his cellmate, which left him with ▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Suppl. at 1; Def.'s Reply [Dkt. # 67] ("Reply") at 1.

The government opposes this motion, Gov't Opp. to Def.'s Mot. [Dkt. # 65] ("Opp."), and the motion is now fully briefed. *See also* Chart – Brendon J. Spann, Ex. 2 to Def.'s Mot. [Dkt. # 61-1] (SEALED) ("Def.'s Medical Chart"); Bureau of Prisons Health Services Health Screen [Dkt. # 64] (SEALED) ("BOP Medical Records"); Exs. 1–3 to Def.'s ▮▮▮▮

Medical Records [Dkt. # 69-1–3] (SEALED) ("SJMH Medical Records"). For the following reasons, defendant's motion for compassionate release will be denied without prejudice.

## BACKGROUND

The Court detailed the nature of the offense, as well as the potential risks posed to the defendant's health by incarceration, in its prior bond review decisions in this case,[1] and all of that information is incorporated here as well.

Defendant has been detained since his arrest on July 23, 2019. *See* Arrest Warrant [Dkt. # 2]. On February 13, 2020, he pled guilty to Count 1 of the indictment, [Dkt. # 5], which charged him with cyberstalking in violation of 18 U.S.C. § 2261A(2), a crime punishable by imprisonment of up to five years. *See* Min. Entry (Feb. 13, 2020); Plea Agreement [Dkt. # 31]. The defendant swore to the accuracy of an Agreed Statement of Facts, [Dkt. # 32] ("SOF"), which recounted the numerous threatening text and email messages defendant sent to his ex-girlfriend ("Victim 1") and her family, friends, and colleagues. Judgment was entered on August 13, 2020, when the Court sentenced the defendant to a term of thirty months incarceration to be followed by thirty-six months of supervised release. *See* Judgment at 2–3; Min. Entry (Aug. 13, 2020).

## LEGAL STANDARD

A court may reduce a term of imprisonment under the compassionate release statute, as modified by the First Step Act, if after considering "the factors set forth in section 3553(a) to the extent that they are applicable," it makes two findings: first, that "extraordinary and compelling reasons warrant such a reduction," and second, "that such a reduction is consistent with applicable

---

1   *See* Order of Sept. 9, 2019 [Dkt. # 16] ("Sept. 2019 Order") (denying defendant's motion to revoke order of detention); Order of May 3, 2020 [Dkt. # 44] ("May 2020 Order") (denying defendant's emergency motion to reopen detention hearing).

policy statements issued by the Sentencing Commission[.]" 18 U.S.C. § 3582(c)(1)(A)(i).[2] The policy statement issued by the Commission tracks the language of the statute, reiterating the need for a defendant to show that "extraordinary and compelling reasons warrant the reduction[,]" U.S.S.G. § 1B1.13(1)(A), and that the reduction would be consistent with the policy statement, *id.* § 1B1.13(3), and it adds the requirement that a "defendant is not a danger to the safety of any other person or to the community[.]" *Id.* § 1B1.13(2).

The Commission's policy statement lists examples of the "extraordinary and compelling reasons" that would satisfy the statute, including a showing that the defendant is:

>  (I)   suffering from a serious physical or medical condition,
>
>  (II)  suffering from a serious functional or cognitive impairment, or
>
>  (III) experiencing deteriorating physical or mental health because of the aging process,
>
>  that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13 cmt. n.1(A)(ii).

## ANALYSIS

**I.   Defendant has not identified any extraordinary or compelling reason warranting a modification of his sentence under the compassionate release statute.**

The Court will deny defendant's motion because he has not pointed to the necessary extraordinary and compelling reasons to modify his sentence. Defendant first predicates his

---

2   *See* 28 U.S.C. § 994(a)(2)(C) (requiring the Commission to promulgate a general policy statement on the sentence modification provisions in section 3582(c) of title 18); *id.* § 994(t) (providing that the policy statement "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples").

motion on the coronavirus pandemic and his lifelong medical condition, ▇. See Mot. at 2; see also Def.'s Medical Chart at 2, 4–8. The prison health records confirm ▇ diagnosis, and that he has been prescribed ▇ BOP Medical Records at 4–5. But at present, as during all phases of these proceedings, the defendant's ▇ appears to be well-managed, and he has not demonstrated that he is seriously ill or that his ▇ has deteriorated to the point that it affects his ability to function or his life expectancy.

Defendant argues that his primary concern is that the conditions of incarceration – coupled with his history of ▇ make him more likely to contract COVID-19. See Mot. at 2. It is true that guidance issued by the Centers for Disease Control and Prevention ("CDC") warns that people with ▇. However, none of the information submitted by defendant or published by the CDC indicates that people with ▇ are more likely to be infected than others.

The medical records he cites do not support the assertion that he is at a particularly increased risk of serious illness should he contract coronavirus. See Def.'s Medical Chart at 5 (describing defendant as ▇ ▇ ▇ ▇); see also id. at 6–8 (describing defendant's ▇). And while defendant suggests that coronavirus is running rampant at the facility, see Mot. at 2, Suppl. at 1, there is little evidence that remains an issue at present, at least at FCI Milan.[3]

---

3   Defendant cites a report from January 2021, with data current through December 2020. See DOJ OIG Report [Dkt. # 62-1] at 2.

According to the government, there are very few cases at his facility, Opp. at 4, and the publicly available BOP statistics report that there is only one active case among the inmates at the facility and four involving staff.[4]

The Court is respectful of the fact that the defendant is ▮▮▮▮▮▮▮▮, and it does not wish to minimize the significance of that condition and his medical history.  But the latest submissions challenging defendant's continued detention do not provide the Court with any new information that would suggest that his condition has worsened or increased his vulnerability to infection, and therefore the record in this case does not show that he is in particular danger at this time in a manner that would trigger the protections of the compassionate release provisions.

Defendant also informs the Court that he was attacked by his cellmate last month, and that he suffered a number of injuries, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  Suppl. at 1; Reply at 1.  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

This is a deeply concerning incident, but the Court is required to view it through the particular lens of the compassionate release statute.[5]  The medical records reviewed by the Court reveal that defendant was "otherwise well" when the attack occurred, *see* Ex. 1 to SJMH Medical Records at 13, and he was medically cleared to return to prison ▮▮▮▮▮▮▮▮▮▮▮  *Id.* at 9

---

4   *COVID-19 Cases*, Bureau of Prisons, https://www.bop.gov/coronavirus/ (last updated Apr. 15, 2021).

5   If defendant has claims to bring against the Bureau of Prisons related to the attack and the conditions of his detention, they are more appropriately pursued through administrative proceedings or through civil action brought in the district in which he is detained, rather than through a motion for compassionate release with the sentencing court.



Given these circumstances, defendant's showing does not rise to the level of an "exceptional circumstance" warranting release under the First Step Act.

**II.     Early release of defendant would not be consistent with the Sentencing Commission's policy statement.**

Even if defendant's circumstances could be considered compelling enough to warrant his early release into supervision, the characteristics of defendant and the nature of his crime suggest that he continues to pose a danger to his victims and the community at large.

In denying defendant's prior emergency motion to reopen his detention hearing, the Court discussed that he was particularly susceptible to recidivism:

> The defendant points out that he desisted [from engaging in cyberstalking] during the times that he was subject to restraining orders issued by judges, but he returned to his campaign of harassment each time a temporary restraining order expired. As the Court explained in detail when it denied his previous motion to be released, the defendant's admitted conduct was not only annoying and harassing, but it was threatening and highly dangerous, and the victims have attested to its ongoing effects on their emotional well-being and the fear the prospect of his release engenders. *See* [Notice of Victim Impact Statements Regarding Bond [Dkt. # 43]] at 2–7 [(footnote omitted)]. The Court does not doubt that the defendant has been somewhat chastened by his incarceration to date, particularly under the current circumstances, it cannot ignore the fact that he has not yet had the benefit of any therapeutic intervention – or even anger management programs – that could be viewed as evidence of an improved ability to handle his strong emotions. Therefore, given the strength of the evidence of his dangerousness, the number of potential victims, and the difficulties involved in ensuring that the defendant has absolutely no access to a phone or the internet, the motion will be denied.

May 2020 Order at 13–14.

Other courts in this district have held that compassionate release is inappropriate where the defendant was "at [a] high risk of reoffending." *United States v. Sears*, No. 19-cr-21 (KBJ), 2020 WL 3250717, at *3 (D.D.C. June 16, 2020). Given defendant's history of violating prior restraining orders, and the fact that defendant has not proffered any new evidence to assuage the Court's concerns that given "his high degree of technical savvy, [defendant may] find a way to communicate with his victims if released," May 2020 Order at 12–13, the Court concludes that defendant should serve out the fewer than ten months remaining of his sentence, and undergo the gradual re-entry prescribed by the Bureau of Prisons.

## CONCLUSION

For these reasons, defendant's motion for compassionate release, [Dkt. # 60], is **DENIED** without prejudice to a renewed motion should there be a significant change in defendant's circumstances.

AMY BERMAN JACKSON
United States District Judge

DATE: April 21, 2021